ALLAN R. KEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Key v. Commissioner
Docket No. 12724-78.
United States Tax Court
T.C. Memo 1980-240; 1980 Tax Ct. Memo LEXIS 346; 40 T.C.M. (CCH) 605; T.C.M. (RIA) 80240; July 8, 1980, Filed Allan R. Key, pro se. Alan J. Pinner, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioner's income tax for the year 1975 in the amount of $816. Concessions having been made, the only remaining question is whether petitioner is entitled to a business loss under section 162. [1]
FINDINGS OF FACT *347 Some of the facts have been stipulated and are so found. Petitioner Allan R. Key (petitioner) resided in La Puente, California, at the time the petition was filed herein. He filed an individual 1975 Federal income tax return for the year in issue. During the taxable year 1975, petitioner was employed as a sheet metal worker by Zieman Manufacturing Company, and he was also self-employed as a solicitor for distributors of Shaklee Products (hereinafter Shaklee). All of the claimed business expense deductions at issue hereunder were claimed in connection with petitioner's self-employment business. Shaklee manufactures a wide variety of consumer products from household detergents to vitamins. The sale of these products, however, is secondary. Of primary concern to Shaklee is the continued increase in the number of distributors which it has to market the products. As the base of its sales organization expands, greater revenues are shared by higher echelon distributors. This "pyramid type" sales scheme works well so long as additional distributors are recruited for the sales organization. It was, therefore, petitioner's job to solicit distributors for Shaklee and, more directly, *348 for his father who was a distributor of Shaklee products. As consideration for recruiting distributors for his father, petitioner received $4,850 in commissions during taxable year 1975. Petitioner made trips to Arizona, Colorado and Texas during 1975 and spent a part of his time recruiting. As concerns this recruiting, he claimed $1,200 in commissions paid to certain individuals to increase his business and $4,783 in other business expense deductions. Therefore, petitioner reported a net loss (of $1,133) from the operation of his promotional business in 1975. Of the $5,983 in claimed business expense deductions attributable to petitioner's self-employment, respondent allowed $527 and disallowed $5,456 of such expenses as follows: Expenses
Claimed
Allowed
Disallowed
Commissions
$1,200.00
$0
$1,200.00
Bad Debts *
248.00
0
248.00
Mileage
2,280.00
450.00
1,830.00
Rent
900.00
50.00
850.00
Phone
340.00
7.00
330 .00
Utilities
330.00
0
330.00
Stationery
110.00
20.00
90.00
Advertising
80.00
0
80.00
Dues
60.00
0
60.00
Entertainment
195.00
0.h195.00
Grooming **
240.00
0
240.00
Total
$5,983.00
$527.00
5,456.00
*349 During the taxable year in issue, petitioner rented a two-bedroom house which he sometimes used as an office. He allowed a woman and her two children to reside in the house during this same period in return for her telephone answering services. In 1975 petitioner actually paid rent in the amount of $1,785 however he only claimed $900 on Schedule C of his return. Petitioner's income tax return for the year in issue was prepared by Louis Pugliani (Publiani), a tax return preparer, who retained in his files petitioner's records and original receipts. Pugliani's office was ransacked and burglarized and all of these records, including the steel filing cabinet in which they were kept, were taken and have never been recovered. [2] As a consequence, secondary evidence was received at trial herein. *350 In his statutory notice of deficiency, respondent disallowed the ($1,133) net loss from petitioner's self-employment business because of the lack of proof as to the $5,456 in disallowed claimed deductions. Consequently, respondent found that petitioner had a net profit in the amount of $4,323 from self-employment. OPINION Petitioner calls upon this Court to decide whether a variety of claimed business expense deductions, which he allegedly incurred in his trade of business, are deductible under section 162. He reasons that if the heretofore stated business expenses did not exist, then neither did the business. [3]
It is well settled that deductions are a matter of legislative grace, and not an automatic entitlement. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). This is also the case with respect to the deductibility of an operating loss. Burnet v. Houston, 283 U.S. 223 (1931). Therefore, petitioner must bear the burden *351 of proof with respect to the deductibility of the business expenses that result, in this case, in a net operating loss. Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioner has filed no brief, but has relied solely upon the secondary evidence proferred at trial. Such evidence is wholly testimonial. We have considered it carefully and found it to be wanting in many regards. Thus, during the course of the trial, we announced that there was an obvious failure of the burden of proof with respect to every item at issue. At trial petitioner adopted respondent's characterization of Shaklee's business. What is disturbing from this characterization, and endorsed by petitioner in his petition, is that Shaklee apparently advised him that "everything you spend, you can deduct" provided a Shaklee catalog and products accompany your presentation. This is clearly in error and ruptures the statutory requirement which legitimate business expense deductions must satisfy under section 162. The claimed business expense commissions were referred to at trial as "advances" by petitioner. He viewed these as loans, albeit none of the loans was ever repaid. Respondent's disallowance *352 of the $1,200 paid as "commission" was proper and we will not disturb it. We also believe that respondent's action in allowing $450 of the claimed $2,280 in mileage (travel) expenses was generous and it is not disturbed. Petitioner's testimony, as to the length of the travel and the amount of time devoted to business versus simply visiting with friends, is vague. The travel appears to have been largely personal in nature. As to the claimed rental deduction, petitioner produced rent receipts for the period in issue aggregating $1,785, and respondent has stipulated that such rent was paid by petitioner. Yet, petitioner only chose to claim $900 in taxable year 1975 as a business rent deduction and respondent contends that only $50 of this amount was "office" space, and thus an ordinary and necessary business expense deduction. Petitioner testified that a two-bedroom house was used as his office during the period in issue. He further testified that a woman and her two children used the "office" as their living quarters in return for her services in answering the telephone during his absences. Petitioner could not recall his typical working day or the periods of his absence *353 from this "office." When queried on the phone and his secretarial service, the witness responded: THE COURT: How big was it? [the house] Describe it. THE WITNESS: It was a house -- a two bedroom house.
THE COURT: It was a whole house? THE WITNESS: Yes. I used it as an office. THE COURT: Was it used for anything else? THE WITNESS: Well, I had a girl staying there. She was answering the phone while I was gone. I didn't even claim that. * * *
THE COURT: And you had a telephone? THE WITNESS: I believe so. THE COURT: You don't remember? THE WITNESS: See, Your Honor, I don't remember. I can't remember if I had one there or not. I'm not -- THE COURT: You had a girl living there to answer the phone, but now, you don't know whether you had a phone or not. THE WITNESS: Boy, I wish I could remember things. I can't. I'm just going to have to -- like you say, I'm under oath right now, right? THE COURT: Yes. THE WITNESS: So I don't want to perjure myself, so I just don't remember. I can't remember it. If I could, I would tell you. In view of this testimony, we believe that $50 for rent and $7 for telephone service are fair allowances as business *354 expenses and have not disturbed them. Respondent allowed nothing for the utilities expense and only $20 for stationery expense. Since at trial petitioner could recall no amounts paid for utilities and nothing of substance regarding the stationery expense, we find that respondent's allowance is fair for both items and approve it. Similarly, respondent allowed no deduction for advertising, dues, entertainment and grooming. Nothing petitioner offered at trial supports these claimed deductions and, with respect to the entertainment expenditures, we find that petitioner would also fail the substantiation tests of section 274(d). We now come to "grooming" for which petitioner claimed a deduction of $240. This is not the case of a taxpayer claiming, as an itemized deduction, amounts spent on work uniforms or special clothing which we have allowed in the past, unless, of course, such clothing was adaptable for ordinary wear. See Donnelly v. Commissioner, 28 T.C. 1278, 1280 (1957). It was developed at trial that this item was for street clothes, haircuts, etc.--all purely personal. We therefore sustain respondent's determination as to these items. Having reviewed *355 every deduction item claimed by petitioner, we find and hold that he has failed to carry his burden of substantiation and is entitled to no deductions over and above the amounts which respondent has allowed.
Because of concessions, Decision will be entered for respondent. Footnotes
1. Unless otherwise specified, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
*. Petitioner has stipulated that he was not entitled to the bad debt deduction. ** Petitioner also incurred, but did not deduct, amounts spent on uniforms and gloves used in his job as a sheet metal worker. However, the $240 claimed on his Schedule C, attributable to his self-employment, necessarily excludes these amounts and represents only sums expended for personal grooming, to wit: clothes, haircuts, and sundry items.↩
2. We note that the exact date of the burglary was never established at trial. However, Pugliani did testify that a police report of the burglary was filed with the Temple City Sheriff's Department and that said report could be reproduced if respondent so desired, thereby substantiating the witness' testimony that the burglary in question occurred sometime after the receipt of petitioner's books and records.↩
3. While in a factually similar case we ruled on the deductibility of these expenses from the bench, such ruling was reserved in the instant case. See Key v. Commissioner, T.C. Memo. 1980-67↩.